## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

JOSEPH MALDONADO,

      Plaintiff,

v.                             Case No.: 3:22-cv-18229-TKW-ZCB

BMG RIGHTS MANAGEMENT LLC,
TIGER KING PUBLISHING, AND VINCE
JOHNSON,

      Defendants.

_____/

## FIRST AMENDED COMPLAINT
## FOR DAMAGES AND INJUNCTIVE RELIEF

COMES NOW, the Plaintiff, JOSEPH MALDONADO (hereafter "MALDONADO"), by and through the undersigned counsel, and files this First Amended Complaint against Defendants, BMG RIGHTS MANAGEMENT LLC ("BMG"), VINCE JOHNSON ("JOHNSON"), and TIGER KING PUBLISHING and in support thereof states as follows:

### JURISDICTION AND VENUE

1.    This is a civil action seeking damages and injunctive relief for copyright infringement arising under the Copyright Act of 1976, Title 17 U.S.C. §§101 *et seq*.

2.    This Court has subject matter jurisdiction over the copyright claim pursuant to 28 U.S.C. §§ 1331 and 1338.

3.     This Court has subject matter jurisdiction over the Lanham Act claims pursuant to 28 U.S.C. § 1331.

4.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.     This Court has diversity jurisdiction over all claims pursuant to 28 U.S.C. § 1332, because the Plaintiff is a citizen of Florida and the Defendants are comprised of citizens or corporations of the United States (New York, California and/or Washington). Moreover, the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

6.     Venue is proper in the state of Florida pursuant to 28 U.S.C. §1391.

Pursuant to 28 U.S. Code §1391, a civil action may be brought in:

(1)   a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2)   a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or

(3)   if there is no district in which any action may otherwise be brought as provided in this section, any judicial district in which any defendant in subject to the court's personal jurisdiction with respect to such action.

28 U.S. Code §1391.

7.     A substantial portion of the events mentioned herein, which are the subject matter of the lawsuit, occurred and are occurring in the state of Florida. The

Defendants purposely availed themselves to the benefits and protections of Florida's State laws by establishing substantial contacts with the State of Florida. These substantial contacts with Florida arise from and/or are directly pertaining to Plaintiff's cause of action.

8.      Despite JOHNSON's contention, MALDONADO's domicile is the State of Florida.  An individual who is incarcerated does not acquire a domicile where imprisoned. *United States v. Stabler*, 169 F.2d 995, 998 (3d Cir. 1948); *People v. Cady,* 143 N.Y. 100 (N.Y. Ct. App. 1894). The correlation between residence and domicile, requires that a certain level of picking out a place to live in by the individual concerned is involved. *Id*; *Neuberger v. United States*, 13 F.2d 541 (2d Cir. 1926).  "An inmate does not become a resident of a state merely by virtue of his incarceration there if he was a resident of another state before his incarceration and there is no indication that he intends to relocate to the state of incarceration upon his release." *Gottlieb v. United States*, No. 02-3924, 2006 U.S. Dist. LEXIS 64249, at *9 (D.N.J. Sept. 8, 2006); *Flanagan v. Shively*, 783 F. Supp. 922, 935 (M.D. Pa. 1992).

9.      There is diversity jurisdiction among the defendants, as each defendant resides in a different state.

10.      The subject contracts entered into between MALDONADO and JOHNSON, assigned, "[a]ll rights and credits" of the music compilations to

MALDONADO "in perpetuity in all jurisdictions, throughout the universe." Since MALDONADO is currently a resident of the State of Florida, all rights and credits of the subject music rest with him in the State of Florida.

11.     Furthermore, JOHNSON purposely availed himself and the musical compositions to the State of Florida by reaching out to Carole Baskin, a resident of Florida, in an intentional effort to formulate a business relationship. JOHNSON attempted to sell Carole Baskin the musical compositions at issue.

12.     JOHNSON admitted he purposely availed himself to the State of Florida in his 2018 deposition testimony in an unrelated case. He made a conscious effort to offer *Tiger King* related musical compositions to Baskin, a lifelong Florida resident. The testimony is as follows:

> Q:     Is it fair for me to say that this email was you reaching out to Ms. Baskin to try to get some work from her? Or were you trying to sell this particular song to her? Because – I apologize for this.
>
> A:     ***A little of both***. You know, I sent her the song, you know, what do you think of this? I wish I had never done that.
>
> Q:     Never done the song?
>
> A:     The song or contacted her, you know.

Johnson Dep. 56:5-17, Feb. 12, 2018.

13.     Furthermore, the breach occurred while Plaintiff was a resident of the State of Florida.

14.     As outlined herein JOHNSON improperly licensed the subject music to various entities.  Included in those entities were Florida musicians.[1]

15.     Florida media has been misled by JOHNSON's false campaign to take credit for Maldonado's music. For instance, Orlando Weekly and Creative Loafing reported:

> "Johnson and Clinton did the work for free, and recorded three albums worth of songs for *Tiger King* before Clinton died from a heart condition. 'Archival Footage' is the credit the boys got from producers of the Netflix hit."

16.     Therefore, under Section 28 U.S. Code §1391(2), the subject claim may be brought in the Florida because a substantial part of the events or omissions giving rise to the subject claim occurred in Florida and because the property that is the subject of the action is also situated with MALDONADO in Florida.

17.     The Eleventh Circuit Court of Appeals utilizes a two-part inquiry in order to establish proper jurisdiction over a non-resident. *McGregor v. In Tune Music Grp*., No. 15-62044 2016 U.S. Dist. LEXIS 190302, at *12 (S.D. Fla., July 19, 2016). The first prong to be established, is to "determine whether Defendants fall within the reach of [Florida's] long-arm statute, …." *Id; See Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir. 1990). Then, this Court "must then determine

---

[1]     https://www.orlandoweekly.com/music/florida-guitarist-and-songwriter-pays-homage-to-the-men-behind-joe-exotics-music-27182428.

whether Defendants contacts with this State are sufficient to satisfy the Due Process Clause of the Fourteenth Amendment." *Id*.

18.     First, under § 48.193(1)(b), Fla. Stat. (2022), personal jurisdiction was established over JOHNSON the moment he "committed tortious acts that cause[d] injury in Florida, even [when] the tortious act was committed outside the state. *Id*. at 13. Additionally, under § 48.193(1)(b), Fla. Stat. (2022), "[c]opyright infringement is [seen as] a tortious act within the meaning of [the statute]." *Id; citing Cable/Home Communication Corp. v. Network Productions, Inc.* 902 F.2d 829, 857 (11th Cir. 1990).

19.     The intentional tortious actions taken by JOHNSON were all dealings directed at the forum state of Florida.  Further, injury suffered as a result of the intentional tortious acts can be directly incorporated with the state where the copyright owner resides. *Id* at 13-14. Here, MALDONADO resided in Florida at the time of breach.

20.     Secondly, the Due Process Clause "requires the defendant have 'fair warning' that a particular activity may subject him to the jurisdiction of a foreign sovereign." *Id* at 14; *Madara,* 916 F.2d at 1516. The determination for fair warning was "satisfied [when] the [D]efendant 'purposely directed his activities at the forum [state of Florida] and the litigation results from alleged injuries that 'ar[o]se out of or relate[d] to' those activities."

21.     In *Calder v. Jones,* 465 U.S. 783, 789-90 (1984), the court applied the *Calder* 'effects' test, "when the plaintiff's claim involves an intentional tort." *Id* at 15; *see Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3e 1210, 1221 n.28 (11th Cir. 2009). The effects test when applied serves as a rigorous approach for determining that sufficient minimum contacts exist. *Id.* This is accomplished when "the defendant (1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." *Oldfield*, 558 F.3d at 1221 n.28.

22.     JOHNSON's contact with a Florida resident, with the sole intention of selling previously created musical works and/or formulating a relationship where he created new musical compositions for her sole use, was in itself fair warning, as breaches of contract and copyright infringement had occurred.

23.     The Eleventh Circuit held in *Licciardello v. Lovelady,* 544 F.3d 1280, 1287-88 (11th Cir. 2008), if copyright infringement is performed with the sole desire of obtaining monetary gains, it therefore equates to an intentional tort. Second, there must be specific intentional activity aimed at the forum state of Florida

24.     JOHNSON did not intentionally contact Florida Residents with any charitable intention of creating or providing musical works, absent receipt of monetary compensation. His sole desire in distributing the works throughout the State of Florida was to be compensated financially.

25.    Similar to *McGregor*, MALDONADO is suing for copyright infringement and the compositions at issue continue to accrue royalties absent Plaintiff's authority, withstanding the fact that he has sent each Defendant cease and desist notices that have failed to be complied with. 2016 U.S. Dist. LEXIS 190302, at *17. This satisfies element two of the above effects test.

26.    Further, that the causing of injury could have been reasonably anticipated by JOHNSON at the time of occurrence. In concert with *Licciardello*, Plaintiff in that case was also a resident of Florida who had been allegedly injured as a result of the intentional acts of a nonresident, which resulted in conduct directed towards the forum state, similarly it should be determined that "[it] is not required to travel to the nonresident's state of residence to obtain a remedy." 544 F.3d at 1288; *McGregor* 2016 U.S. Dist. LEXIS 190302, at *19. Plaintiff should not be required to travel to Washington state, at the convenience of JOHNSON, for his intentional misconduct that resulted in injury stemming from his insatiable desire for greed at the expense of MALDONADO. This satisfies element three of the above effects test.

## THE PARTIES

27.    Plaintiff MALDONADO is a citizen and natural person who established residency prior to his incarceration in the State of Florida.

28. Defendant BMG is a foreign for-profit limited liability company with its principal place of business located in New York, New York.

29. Defendant JOHNSON is a citizen and natural person whose residence is the state of Washington.

30. Defendant TIGER KING PUBLISHING is a foreign for-profit limited liability company with its principal place of business located in New York, New York.

## FACTUAL ALLEGATIONS

31. For over 20 years, MALDONADO has used "Joe Exotic" and "Tiger King" as his professional names, stage names and aliases in connection with music, media, business, professional and personal dealings. MALDONADO owns all publicity rights in and to the "Joe Exotic" and "Tiger King" names.

32. In addition to copyrighting and trademarking the names, MALDONADO has also purchased the rights to commissioned musical compilations for his personal use.

33. JOHNSON is a self-employed artist in the business of writing, performing and selling music, who earns his livelihood from fees obtained pursuant to these activities.

34. Danny Clinton, a former bandmate of JOHNSON, is deceased.

35.     Defendants JOHNSON, TIGER KING PUBLISHING, and BMG have knowingly and maliciously claimed ownership of, misused, published, disseminated, performed, sold and profited from musical compositions that contractually belong to MALDONADO.

36.     Additionally, JOHNSON has breached the terms of a confidentiality agreement which prevented disclosure of information associated with the subject music compositions when he participated in interviews with the media and by engaging in financial relationships with BMG and TIGER KING PUBLISHING wherein JOHNSON falsely claimed ownership of music compilations that contractually did not belong to him.  In doing so, JOHNSON, BMG, and TIGER KING PUBLISHING have disparaged MALDONADO and the "Joe Exotic" and "Tiger King" brands. JOHNSON admitted he acted with intent so as to profit from MALDONADO'S fame following the airing of Netflix's *Tiger King: Murder, Mayhem and Madness*.

37.     In or around 2013, MALDONADO and JOHNSON entered into a confidential agreement wherein JOHNSON would manufacture music compilations and / or songs for MALDONADO'S personal use. The manufacturing process was designed to provide MALDONADO exclusive rights to intellectual property, and among other things, allow MALDONADO the right to copyright master recordings in his own name. This exclusive right to copyright master recordings was explicitly

outlined in five (5) binding Transfer of Music Rights Agreements ("Agreements"). Each Agreement provided that JOHNSON relinquish all copyright, publishing rights and all other related rights of the music and/or songs. All rights of the song would rest with the MALDONADO "in perpetuity in all jurisdictions and through all process" once the agreement was executed.

38.     In or around 2013, MALDONADO and JOHNSON and the Clinton Johnson Band entered into a Transfer of Music Rights Agreement specifically associated with the music compilation "I Saw a Tiger" ("I Saw a Tiger Agreement"). A copy of the I Saw a Tiger Agreement is attached hereto as Exhibit 1.

39.     In or around 2013, MALDONADO and JOHNSON and Danny Clinton entered into a Transfer of Music Rights Agreement specifically associated with the music compilation "My First Love" ("My First Love Agreement"). A copy of the My First Love Agreement is attached hereto as Exhibit 2.

40.     In or around 2013, MALDONADO and JOHNSON and Danny Clinton entered into a Transfer of Music Rights Agreement specifically associated with the music compilation "GW and Me" ("GW and Me Agreement"). A copy of the GW and Me Agreement is attached hereto as Exhibit 3.

41.     In or around 2013, MALDONADO and JOHNSON and Danny Clinton entered into a Transfer of Music Rights Agreement specifically associated with the

music compilation "Pretty Women Lover" ("Pretty Women Lover Agreement"). A copy of the Pretty Women Lover Agreement is attached hereto as Exhibit 4.

42.     In or around 2013, MALDONADO and JOHNSON and Danny Clinton entered into a Transfer of Music Rights Agreement specifically associated with the music compilation "The Sun Says" ("The Sun Says Agreement"). A copy of The Sun Says Agreement is attached hereto as Exhibit 5.

43.     In or around 2014, MALDONADO and Danny Clinton created the music compilation "Here Kitty Kitty" without the creative input of JOHNSON. "Here Kitty Kitty" was performed by MALDONADO'S band, Walking on the Edge, without JOHNSON.

44.     On February 6, 2014, MALDONADO AND JOHNSON entered into a Compensated Employee Confidentiality Agreement ("Confidentiality Agreement"). (See attached Exhibit 6.) The Confidentiality Agreement prohibited JOHNSON from disclosing or divulging any "trade secrets, confidential information or any other proprietary data."   The Confidentiality Agreement included the aforementioned songs, proper utilization of music and even outlined the consequences for acts of fraudulent misrepresentation, tortious interferences with potential business relationships, and other various unfair business practices.

45.     The signed Confidentiality Agreement included a liquidated damages section. As such, each breach of the Confidentiality Agreement results in a payment,

not a penalty, of one million dollars per occurrence. These payments were intended to remain confidential and would represent reasonable compensation. They would be paid as relief to MALDONADO.

46. JOHNSON has unequivocally breached the terms of both the Confidentiality Agreement and all five (5) of the Agreements associated with the transfer of music rights. JOHNSON also falsely marketed the music compilation Here Kitty Kitty as belonging to him under the brand TIGER KING PUBLISHING and not to the rightful owner, MALDONADO.

47. On March 23, 2020, <u>Vanity Fair</u> published an article titled *Tiger King: Inside Joe Exotic's wild homemade music videos.*[2] In this article, the writer boasts to finding "the men who really sang songs like "I Saw a Tiger" and "Here Kitty Kitty." In the article, JOHNSON is quoted disclosing and divulging information subject to the Confidentiality Agreement and the Agreements concerning the transfer of music rights by fraudulently claiming entitlement and credit for "I Saw a Tiger" and "Here Kitty Kitty":

> "I had no idea he was going to Milli Vanilli the songs," Johnson wrote <u>Vanity Fair</u> in an email. "It was a couple of months and two or three songs [into the collaboration] when I was on YouTube one night and just happened to look up Joe Exotic. And there he was, lip-syncing and acting like the ghost of Elvis [in these music videos]. I called him up, I was hot…And he bamboozled me about his reality show—that it was coming soon

---

[2] https://www.vanityfair.com/hollywood/2020/03/netflix-tiger-king-joe-exotic

and he would make everything right as rain. I just wanted the proper credit."

48.     On March 24, 2020, the <u>Los Angeles Times</u> published an article titled,

"*Did 'Tiger King' star Joe Exotic really sing those jaw-dropping country songs."[3]*

The article quotes JOHNSON and also credits JOHNSON and Clinton for writing

and performing "My First Love" and "Here Kitty Kitty."  Referring to "Here Kitty

Kitty" the article reads:

> But their (JOHNSON and Clinton) work on "Here Kitty Kitty"
> must have come from an extremely uncomfortably specific set of
> lyrical notes But Johnson and Clinton wrote, performed and
> shipped the song off with complete conviction, and while it's not
> quite up there with "Two Sisters" or "Cocaine Blues" in the
> annals of great murder ballads, it will live on a testament to the
> absolute unhinged vision of Joe Exotic.

49.     On March 27, 2020, <u>Slate</u> published an article called *Behind the music*

*of the Tiger King.*[4]  In this article JOHNSON responded to questions via email.

When referring to "Pretty Women Lover," "My Frist Love," "Here Kitty Kitty,"

JOHNSON was quoted as saying:

> "He seemed like a dandy," Johnson wrote. It wasn't until months
> later, watching Joe's videos on YouTube, that Johnson realized
> Joe was going to "Milli Vanilli" the songs and take full credit for
> them.

---

[3] https://www.latimes.com/entertainment-arts/music/story/2020-03-24/tiger-king-joe-exotic-netflix-country-songs-here-kitty-kitty

[4] https://slate.com/culture/2020/03/netflixs-tiger-king-joe-exotics-music-isnt-even-by-joe-exotic.html

JOHNSON was later quoted explaining that, "Joe would set the subjects for the songs and then leave Johnson to "do my research."

50.     As such, JOHNSON intentionally divulged and disclosed trade secrets associated with music and songs, all in clear breach of the Confidentiality Agreement and the Agreements concerning the transfer of music rights.

51.     JOHNSON repeatedly refers to "Milli Vanilli" in media interviews. The context is as follows.  In the 1980's, John Davis was approached by a music producer named Frank Farian.  Mr. Farian asked Mr. Davis to work on a project, but did not disclose that Mr. Davis' voice would be used for others to lip-sync. The entire series of relationships and contracts were confidential. Mr. Davis never met or directly contracted with the artists composing "Milli Vanilli."

52.     Unlike Mr. Davis, JOHNSON was in direct contractual privity with MALDONADO and was well aware of his legal obligations, confidentiality and transfer of all performances and writings, whether or not MALDONADO chose to perform, voice over, lip sync, publish or use the purchased collateral in any way he chose.

53.     On March 28, 2020, <u>Esquire</u> published an article regarding "Here Kitty Kitty." In this article JOHNSON is quoted:

> But when it comes to his musical endeavors, Maldonado-Passage's involvement in their creation is pretty cosmetic. Slate talked to Vince Johnson, one of the musicians Maldonado-Passage hired to write and record the tunes he essentially lip

synchs in his videos. Johnson says that Maldonado-Passage told him what he wanted the songs to be about, but didn't reveal that he'd be presenting the music to the world as Joe Exotic original tunes.

54. On March 29, 2020, <u>TMZ</u> published an interview with JOHNSON titled '*Tiger King' Band behind Joe Exotic's songs…Hopes to strike gold*.[5]  In the interview JOHNSON was credited with providing the following information:

> As for how The CB Band -- from Vancouver, Washington -- got linked up with the Oklahoma zoo extraordinaire ... Vince tells us they simply responded to one of Joe's ads to make a theme song for Joe's TV show and park, and it evolved from there.
>
> He says how it worked was Exotic would give Vince a theme and some details, he'd write a tune and Danny would sing it. Then they'd email it to Joe.

55. JOHNSON, by divulging and disclosing protected information including that MALDONADO does not in whole or in part "sing his own songs," clearly violated the terms of the Confidentiality Agreement. JOHNSON also admitted that by disclosing his breach and improper secondary gain, he hoped the "hit Netflix docuseries leads to a record deal."  JOHNSON'S intent to monetarily capitalize on MALDONADO'S fame is blatantly clear as well.

56. On June 4, 2020, <u>TMZ</u> published an article about JOHNSON called *Band behind the tunes new deal and song, 'Killer Carole*.'[6]  The purpose was to

[5] https://www.tmz.com/2020/03/29/joe-exotic-band-tiger-king-song-clinton-johnson-record-deal/

[6] https://www.tmz.com/2020/06/04/vince-johnson-band-joe-exotic-music-tiger-king-killer-carole-song/

announce the Vince Johnson Band had "just inked an exclusive licensing and distribution deal with BMG Rights Management and CREATE Music Group." The article further perpetuated JOHNSON's admission that "Vince JOHNSON of The Vince Johnson Band -- who made up one half of the music duo - wrote and performed Joe's tracks featured on the Netflix series." JOHNSON'S hopes of fraudulently capitalizing on MALDONADO'S fame were realized.

57. On June 5, 2020, the <u>Chicago Tribune</u> published an article titled *Band behind 'Tiger King' music lands publishing deal, releases new Carole Baskin song.*[7] The article announced:

> Vince Johnson, one half of The Clinton-Johnson Band who wrote and performed the songs Joe Exotic tried to pass of as his own, has officially signed an exclusive worldwide licensing and distribution deal with BMG Rights Management and Create Music Group. The agreement covers such classics as "I Saw a Tiger" and "My First Love."

> The deal was signed with entity the Vince Johnson Band, not the Clinton-Johnson Band, as Daniel Clinton, Johnson's musical partner, died last year of a heart attack. Under that name, Johnson is set to release a compilation album containing all of the songs he and Clinton wrote that were featured in "Tiger King."

58. On June 5, 2020, <u>Variety</u> published a similar story.[8] Both articles referred to JOHNSON's statements published in the <u>TMZ</u> interview and credited

---

[7] https://www.chicagotribune.com/entertainment/tv/ct-ent-tiger-king-clinton-johnson-band-carole-baskin-song-20200605-4xye32xewvbdnpa3ia7qjkizby-story.html

[8] https://variety.com/2020/music/news/tiger-king-music-band-publishing-carole-baskin-song-1234626348/

JOHNSON with music compilations subject to the five (5) Agreements regarding the transfer of music rights.

59.     When searching the song "Here Kitty Kitty" using the Google Search Engine, the results show the lyrics to "Here Kitty Kitty."  The lyrics are followed by credits for songwriting to Danny Clinton / Vince JOHNSON.  It also notes "Here Kitty Kitty" lyrics © BMG Rights Management.[9]

60.     BMG is a worldwide publishing and recordings business.  On June 7, 2020, BMG announced via BMG.com that "Netflix's 'Tiger King' songwriter Vince JOHNSON signed a global publishing agreement with BMG.[10]

61.     TIGER KING PUBLISHING is an entity that, in addition to JOHNSON, falsely claims ownership to music compilations contractually belonging to MALDONADO.

62.     By entering into deals, agreements and/or contracts with BMG and TIGER KING PUBLISHING, JOHNSON not only violated the terms of the Confidentiality Agreement, but also breached the Sun Says Agreement, My First Love Agreement, the GW and Me Agreement, and the Pretty Women Lover

---

[9]
https://www.google.com/search?q=lyrics+here+kitty+kitty+tiger+king&rlz=1C1GCEU_enUS953US953&sxsrf=AL
iCzsaVPh_MvvoPLCv1qEfpF6gCvyjyOg%3A1662060595537&ei=MwgRY_2pIOLukvQPz8WSsA8&ved=0ahUK
Ewi9j5GbqvT5AhVit4QIHc-
iBPYQ4dUDCA4&uact=5&oq=lyrics+here+kitty+kitty+tiger+king&gs_lcp=Cgdnd3Mtd2l6EAMyCAghEB4QFhA
dOgoIABBHENYEELADOgYIABAeEBY6BQgAEIYDOgUIIRCgAUoECEEYAEoECEYYAFDEBVjqD2CIEW
gBcAF4AIABmgGIAYcMkgEEMC4xMZgBAKABAcgBCMABAQ&sclient=gws-wiz

[10] https://www.bmg.com/de/news/Vince-Johnson-Tiger-King-signs-with-BMG.html

18

Agreement. These Agreements state the songs were "ghost written and performed for the benefit" of MALDONADO "solely on a work for hire basis." Further MALDONADO would "be in its sole right to seek reparations should" JOHNSON or any affiliate "seek to claim credit or rights" to the songs.

63. Additionally, by entering into the deals, agreements and/or contracts with BMG, JOHNSON violated the terms of the I Saw a Tiger Agreement which states JOHNSON relinquished all copyright, publishing rights of the song to MALDONADO.

64. On August 7, 2020, The Vince Johnson Band released a record called *Mind Guerrilla*. "I Saw a Tiger," "Killer Carole," "The Sun Says," "GW and Me," "Pretty Woman Lover," "My First Love" are all featured songs on the album.

65. As of the writing of the Complaint, *Mind Guerrilla* and the individual music compilations subject to this Complaint are available for purchase on streaming platforms including Apple Music, Spotify, Amazon, Tidal, Deezer, Shazam, YouTube and Napster. The songs on the album include the five music compilations subject to Agreements between MALDONADO and JOHNSON. All five compilations are not only featured on an album attributed to JOHNSON, but they also appear on at least eight (8) music streaming platforms which in turn amounts to at least forty-five individual violations of the Agreements and the Confidentiality Agreement.

66. The misappropriation of the music compilations subject to the Agreements is blatant copyright infringement. At present, the infringement continues with the subject music compilations available for sale across a multitude of easily accessible musical outlets. Each of these outlets has resulted in monies being paid out per purchase agreements to other recipients, none of which are MALDONADO.

67. Further, JOHNSON has materially breached the Confidentially Agreement with each interview given wherein he asserts credit for the creation of musical compositions for which he contractually relinquished his rights. The breaches continued when information JOHNSON provided one media outlet was used in the writing of articles for other news outlets. Instead of correcting the misinformation, JOHNSON perpetuated the assertion that he created and owned the rights to the music compilations at issue herein which has resulted in multiple individual material breaches to the Confidentiality Agreement.

68. Defendants JOHNSON, BMG, and TIGER KING PUBLISHING were put on notice of the copyright infringement, mis-information misappropriation of funds via correspondence of August 20, 2021, October 17, 2021, October 18, 2021, November 15, 2021, September 19, 2022. BMG acknowledged receipt of the information via electronic correspondence on October 19, 2021. Despite notice, the subject music compilations remain attributed to JOHNSON and remain available for

sale on a multitude of streaming platforms via agreements with BMG and TIGER KING PUBLISHING. As such, all musical credits are attributed solely to JOHNSON.

69.     BMG failed to correct, contact and/or attempt to verify the identity of the rightful owners of the composition musicals in question.  At the time of the alleged occurrences, MALDONADO'S albums were published and copyrighted under the name "Tiger King Records." This release pre-dates by years the release of *Mind Guerrilla* and all of the current violations of copyright infringement and breach of the confidentiality alleged in this Complaint.  MALDONADO has suffered financially and emotionally from the actions taken by Defendants.  The musical compositions have been downloaded and viewed over 10 million times on pay-to-play platforms.  The subject breaches of confidentiality and the fraudulent misrepresentations and misinformation propounded by Defendants have caused great financial loss and public embarrassment to MALDONADO and his brands, "Joe Exotic" and "Tiger King."

70.     All conditions precedent to the maintenance of this action have been performed, have occurred, have been waived or excused.

## CAUSES OF ACTION

## COUNT I - COPYRIGHT INFRINGEMENT AS TO BMG

71.     Plaintiff incorporates and re-alleges paragraphs 1 through 70 as set forth and alleged herein.

72.     Pursuant to the Copyright Act of 1976, 17 U.S.C. §§101 *et seq*. (Title 17 of the United States Code), during the course of the unauthorized distribution and illicit business transactions, Defendant, BMG, made unabated fraudulent misrepresentations about MALDONADO'S rightfully obtained musical compositions, in clear violation of 17 U.S.C. §§ 106 and 501.

73.     Plaintiff's counsel initially made contact with BMG in August 2021 regarding the unauthorized use of MALDONADO'S copyrighted works. Thereafter, Plaintiff's counsel sent a letter via certified mail on or about December 20, 2021, regarding the unauthorized use of the music at issue, thereby putting them on notice that the unsanctioned assertion of ownership of a derivative work, without authorization and payment to MALDONADO represents a violation of Plaintiff's rights under 17 U.S.C. Sections 106, et seq.

74.     Accordingly, MALDONADO'S copyrighted work was wholly original, pursuant to the Agreements and protected under the Confidentiality Agreement between MALDONADO AND JOHNSON.

75.     BMG's acts constitute copyright infringement, as such were not only willful, intentional and purposeful, but also in complete disregard of and indifference to MALDONADO's contractual rights to the subject music.

76.     BMG's use of the musical compositions at issue, have been done without authorization, consent, or knowledge, and without any compensation paid to MALDONADO.

77.     BMG's acts have caused, are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to MALDONADO and the Joe Exotic and Tiger King brands from which MALDONADO has no adequate remedy at law.

78.     As a direct and proximate result of BMG's infringing conduct alleged herein, MALDONADO has been harmed and is entitled to damages in an amount to be proven at trial.

79.     Pursuant to 17 U.S.C. § 504(b), MALDONADO is also entitled to recovery of profits attributable to BMG's infringing conduct alleged herein, including monies collected from any and all sales of the copyrighted works and products incorporating or embodying the copyrighted work; subject to a proper accounting of such profits.

80.     Additionally, MALDONADO is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c), in an amount of $150,000 for BMG's willful infringing conduct for each of MALDONADO'S works that BMG infringed upon.

81.     Further, MALDONADO is entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

82.     As a direct and proximate result of the BMG's infringing conduct alleged herein, MALDONADO has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless BMG's infringing conduct is enjoined by this Court, BMG will continue to infringe the copyrighted work at issue.

83.     Therefore, MALDONADO is entitled to preliminary and permanent injunctive relief restraining and enjoining BMG's ongoing infringing conduct, pursuant to 17 U.S.C. § 502.

## COUNT II - COPYRIGHT INFRINGEMENT AS TO JOHNSON

84.     MALDONADO incorporates and re-alleges paragraphs 1 through 70 as set forth and alleged herein.

85.     Pursuant to the Copyright Act of 1976, 17 U.S.C. §§101 *et seq*. (Title 17 of the United States Code), during the course of the unauthorized distribution and illicit business transactions, JOHNSON made unabated fraudulent misrepresentations about MALDONADO'S rightfully obtained musical compositions, in clear violation of 17 U.S.C. §§ 106 and 501.

86.     Plaintiff's counsel initially made contact with JOHNSON in 2021 regarding the unauthorized use of MALDONADO'S copyrighted works. Plaintiff's

counsel sent a letter via certified mail on or about August 2022, regarding the unauthorized use of the music at issue, thereby putting them on notice that the unsanctioned assertion of ownership of a derivative work, without authorization and payment to MALDONADO represents a violation of Plaintiff's rights under 17 U.S.C. Sections 106, et seq.

87.     Accordingly, MALDONADO'S copyrighted work was wholly original, pursuant to the Agreements and protected under the Confidentiality Agreement between MALDONADO AND JOHNSON.

88.     JOHNSON'S acts constitute copyright infringement, as such were not only willful, intentional and purposeful, but also in complete disregard of and indifference to MALDONADO'S contractual rights to the subject music.

89.     JOHNSON'S use of the musical compositions at issue, have been done without authorization, consent, or knowledge, and without any compensation paid to MALDONADO.

90.     JOHNSON'S acts have caused, are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to MALDONADO for which Plaintiff has no adequate remedy at law.

91.     As a direct and proximate result of JOHNSON'S infringing conduct alleged herein, MALDONADO has been harmed and is entitled to damages in an amount to be proven at trial.

92. Pursuant to 17 U.S.C. § 504(b), MALDONADO is also entitled to recovery of profits attributable to JOHNSON's infringing conduct alleged herein, including monies from any and all sales of the copyrighted works and products incorporating or embodying the copyrighted works subject to a proper accounting of such profits.

93. Additionally, MALDONADO is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c), in an amount of $150,000 for JOHNSON'S willful infringing conduct for each of MALDONADO'S works that JOHNSON infringed upon.

94. Further, MALDONADO is entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

95. As a direct and proximate result of the JOHNSON'S infringing conduct alleged herein, MALDONADO has sustained, is sustaining, and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless JOHNSON'S infringing conduct is enjoined by this Court, JOHNSON will continue to infringe the copyrighted work at issue.

96. Therefore, MALDONADO is entitled to preliminary and permanent injunctive relief restraining and enjoining JOHNSON'S ongoing infringing conduct, pursuant to 17 U.S.C. § 502.

## COUNT III - COPYRIGHT INFRINGEMENT AS TO TIGER KING PUBLISHING

97.     MALDONADO incorporates and re-alleges paragraphs 1 through 70 as set forth and alleged herein.

98.     Pursuant to the Copyright Act of 1976, 17 U.S.C. §§101 *et seq*. (Title 17 of the United States Code), during the course of the unauthorized distribution and illicit business transactions, TIGER KING PUBLISHING made unabated fraudulent misrepresentations about MALDONADO'S rightfully obtained musical compositions, in clear violation of 17 U.S.C. §§ 106 and 501.

99.     Plaintiff's counsel initially made contact with TIGER KING PUBLISHING in 2021 regarding the unauthorized use of copyrighted works, thereby putting TIGER KING PUBLISHING on notice that the unsanctioned assertion of ownership of a derivative work, without authorization and payment to MALDONADO, represents a violation of Plaintiff's rights under 17 U.S.C. Sections 106, et seq.

100.    Accordingly, MALDONADO'S copyrighted work was wholly original, pursuant to the Agreements and protected under the Confidentiality Agreement between MALDONADO AND JOHNSON.

101.    TIGER KING PUBLISHING'S acts constitute copyright infringement, as such were not only willful, intentional and purposeful, but also in complete

disregard of and indifference to MALDONADO'S contractual rights to the subject music.

102. TIGER KING PUBLISHING'S use of the musical compositions at issue, have been done without authorization, consent, or knowledge, and without any compensation paid to MALDONADO.

103. TIGER KING PUBLISHING's acts have caused, are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to MALDONADO for which Plaintiff has no adequate remedy at law.

104. As a direct and proximate result of TIGER KING PUBLISHING's infringing conduct alleged herein, MALDONADO has been harmed and is entitled to damages in an amount to be proven at trial.

105. Pursuant to 17 U.S.C. § 504(b), MALDONADO is also entitled to recovery of profits attributable to TIGER KING PUBLISHING'S infringing conduct alleged herein, including monies from any and all sales of the copyrighted work and products incorporating or embodying the copyrighted work subject to a proper accounting of such profits.

106. Additionally, MALDONADO is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c), in an amount of $150,000 for TIGER KING PUBLISHING'S willful infringing conduct for each of MALDONADO'S works that TIGER KING PUBLISHING infringed upon.

107.   Additionally, MALDONADO is entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

108.   As a direct and proximate result of the TIGER KING PUBLISHING'S infringing conduct alleged herein, MALDONADO has sustained, is sustaining, and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless TIGER KING PUBLISHING's infringing conduct is enjoined by this Court, TIGER KING PUBLISHING will continue to infringe the copyrighted work at issue.

109.   Therefore, MALDONADO is entitled to preliminary and permanent injunctive relief restraining and enjoining TIGER KING PUBLISHING's ongoing infringing conduct, pursuant to 17 U.S.C. § 502.

## COUNT IV – LANHAM ACT VIOLATION AS TO BMG

110.   MALDONADO incorporates and re-alleges paragraphs 1 through 70 as set forth and alleged herein.

111.   MALDONADO'S claim arises under the Lanham Act of July 5, 1946, 15 U. S. C. sections 1051- 1127, particularly Section 43(a) of the Lanham Act, 15 U.S.C Section 1125(a). BMG has used, is using, and will continue to use in connection with their commercial services and merchantable goods, MALDONADO's work in interstate commerce, which directly contributes to a false and misleading representation and has resulted in financial loss to MALDONADO.

112. Upon information and belief, BMG's acts were designed to exploit the popularity and unique style of MALDONADO and have caused confusion as to the association of BMG and MALDONADO, endorsement, sponsorship and approval of MALDONADO's work. BMG's unauthorized use of the "I Saw A Tiger," "My First Love," "GW and Me," "Pretty Women Lover," "The Sun Says," and "Here Kitty Kitty," in association with their intentional misrepresentation and exploitation of the derivative work acts, were carefully orchestrated in order to accomplish a self-serving and profit seeking purpose, solely directed at obtaining a commercial advantage.

113. Upon information and belief, BMG committed the aforementioned actions willfully and in utter disregard for MALDONADO's rights. These intentional activities resulted in undeserved ill-gotten profits. The abovementioned unlawful acts have damaged MALDONADO and will continue in perpetuity, absent corrective action.

114. Further, MALDONADO is entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

115. As a direct and proximate result of the BMG's infringing conduct alleged herein, MALDONADO has sustained, is sustaining, and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate

remedy at law. Unless BMG's infringing conduct is enjoined by this Court, BMG will continue to infringe the copyrighted work at issue.

116. Therefore, MALDONADO is entitled to preliminary and permanent injunctive relief restraining and enjoining BMG's ongoing infringing conduct, pursuant to 17 U.S.C. § 502.

## COUNT V – LANHAM ACT VIOLATION AS TO JOHNSON

117. MALDONADO incorporates and re-alleges paragraphs 1 through 70 as set forth and alleged herein.

118. MALDONADO'S claim arises under the Lanham Act of July 5, 1946, 15 U. S. C. sections 1051- 1127, particularly Section 43(a) of the Lanham Act, 15 U.S.C Section 1125(a). JOHNSON has used, is using and will continue to use in connection with their commercial services and merchantable goods, MALDONADO's work in interstate commerce, which directly contributes to a false and misleading representation, that repeatedly has resulted in financial loss to MALDONADO.

119. Upon information and belief, JOHNSON'S acts were designed to exploit the popularity and unique style of MALDONADO and have caused confusion as to the association of JOHNSON and MALDONADO, endorsement, sponsorship and approval of MALDONADO's work. JOHNSON'S unauthorized use of the "I Saw A Tiger," "My First Love," "GW and Me," "Pretty Women Lover,"

"The Sun Says," and "Here Kitty Kitty," in association with their intentional misrepresentation and exploitation of the derivative work acts, were carefully orchestrated in order to accomplish a self-serving and profit seeking purpose, solely directed at obtaining a commercial advantage.

120. Upon information and belief, JOHNSON committed the aforementioned actions willfully and in utter disregard for MALDONADO's rights. These intentional activities resulted in undeserved ill-gotten profits. The abovementioned unlawful acts have damaged MALDONADO and will continue in perpetuity, absent corrective action.

121. Further, MALDONADO is entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

122. As a direct and proximate result of the JOHNSON'S infringing conduct alleged herein, MALDONADO has sustained, is sustaining, and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless JOHNSON'S infringing conduct is enjoined by this Court, JOHNSON will continue to infringe the copyrighted work at issue. MALDONADO therefore is entitled to preliminary and permanent injunctive relief restraining and enjoining JOHNSON's ongoing infringing conduct, pursuant to 17 U.S.C. § 502.

## COUNT VI – LANHAM ACT VIOLATION AS TO TIGER KING PUBLISHING

123. MALDONADO incorporates and re-alleges paragraphs 1 through 70 as set forth and alleged herein.

124. MALDONADO'S claim arises under the Lanham Act of July 5, 1946, 15 U. S. C. sections 1051- 1127, particularly Section 43(a) of the Lanham Act, 15 U.S.C Section 1125(a). TIGER KING PUBLISHING has used, is using and will continue to use in connection with their commercial services and merchantable goods, MALDONADO's work in interstate commerce, which directly contributes to a false and misleading representation, that repeatedly has resulted in financial loss to MALDONADO.

125. Upon information and belief, TIGER KING PUBLISHING'S acts were designed to exploit the popularity and unique style of MALDONADO and have caused confusion as to the association of TIGER KING PUBLISHING and MALDONADO, endorsement, sponsorship and approval of MALDONADO's work. TIGER KING PUBLISHING'S unauthorized use of the "I Saw A Tiger," "My First Love," "GW and Me," "Pretty Women Lover," "The Sun Says," and "Here Kitty Kitty," in association with their intentional misrepresentation and exploitation of the derivative work acts, were carefully orchestrated in order to accomplish a self-serving and profit seeking purpose, solely directed at obtaining a commercial advantage.

126.   Upon information and belief, TIGER KING PUBLISHING committed the aforementioned actions willfully and in utter disregard for MALDONADO's rights.  These intentional activities resulted in undeserved ill-gotten profits. The abovementioned unlawful acts have damaged MALDONADO and will continue in perpetuity, absent corrective action.

127.  Further, MALDONADO is entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

128.   As a direct and proximate result of the TIGER KING PUBLISHING'S infringing conduct alleged herein, MALDONADO has sustained, is sustaining, and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless TIGER KING PUBLISHING'S infringing conduct is enjoined by this Court, TIGER KING PUBLISHING will continue to infringe the copyrighted work at issue.

129.   Therefore, MALDONADO is entitled to preliminary and permanent injunctive relief restraining and enjoining TIGER KING PUBLISHING'S ongoing infringing conduct, pursuant to 17 U.S.C. § 502.

## COUNT VII– FRAUDULENT MISREPRESENTATION AS TO BMG

130.   MALDONADO incorporates and re-alleges paragraphs 1 through 70 as set forth and alleged herein.

131.     MALDONADO'S claim arises under 17 U.S.C. §106 (Title 17 United States Code), BMG has willfully misrepresented that MALDONADO does not possess the exclusive rights to "I Saw A Tiger," "My First Love," "GW and Me," "Pretty Women Lover," "The Sun Says," and "Here Kitty Kitty," which has directly resulted in financial loss to MALDONADO.

132. BMG's unauthorized use of the subject music in association with their intentional misrepresentation and exploitation of the derivative work acts, were carefully orchestrated in order to accomplish a self-serving and profit seeking purpose, solely directed at obtaining a commercial advantage.

133.   Upon information and belief, through the use of TIGER KING PUBLISHING, BMG wrongfully divulged that JOHNSON'S Band, Vince Johnson Band, was the original recording artist and, in fact, had the current exclusive rights to perform these musical compositions in any capacity.

134.   Upon information and belief, BMG committed the aforementioned acts with an intention that the representation would induce others to act, and reliance upon those actions ultimately resulted in Plaintiff suffering monetary injury.

135. Further, MALDONADO is entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

136.  As a direct and proximate result of the BMG's infringing conduct alleged herein, MALDONADO has sustained, is sustaining, and will continue to

sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless BMG'S infringing conduct is enjoined by this Court, BMG will continue to infringe the copyrighted work at issue.

137.    Therefore, MALDONADO is entitled to preliminary and permanent injunctive relief restraining and enjoining BMG'S ongoing infringing conduct, pursuant to 17 U.S.C. § 502.

## COUNT VIII– FRAUDULENT MISREPRESENTATION AS TO JOHNSON

138.    MALDONADO incorporates and re-alleges paragraphs 1 through 70 as set forth and alleged herein.

139.    MALDONADO'S claim arises under 17 U.S.C. §106 (Title 17 United States Code), JOHNSON has willfully misrepresented that MALDONADO does not possess the exclusive rights to "I Saw A Tiger," "My First Love," "GW and Me," "Pretty Women Lover," "The Sun Says," and "Here Kitty Kitty," which has directly resulted in financial loss to MALDONADO.

140.    JOHNSON'S unauthorized use of the subject music in association with the intentional misrepresentation and exploitation of the derivative work acts, were carefully orchestrated in order to accomplish a self-serving and profit seeking purpose, solely directed at obtaining a commercial advantage.

141.    Upon information and belief, through the use of TIGER KING PUBLISHING, JOHNSON wrongfully divulged that JOHNSON'S Band, Vince

Johnson Band, was the original recording artist and, in fact, had the current exclusive rights to perform these musical compositions in any capacity.

142. Upon information and belief, JOHNSON committed the aforementioned acts with an intention that the representation would induce others to act, and reliance upon those actions ultimately resulted in Plaintiff suffering monetary injury.

143. Further, MALDONADO is entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

144. As a direct and proximate result of the JOHNSON's infringing conduct alleged herein, MALDONADO has sustained, is sustaining, and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless JOHNSON'S infringing conduct is enjoined by this Court, JOHNSON will continue to infringe the copyrighted work at issue.

145. Therefore, MALDONADO is entitled to preliminary and permanent injunctive relief restraining and enjoining JOHNSON'S ongoing infringing conduct, pursuant to 17 U.S.C. § 502.

## COUNT IX– FRAUDULENT MISREPRESENTATION AS TO TIGER KING PUBLISHING

146. MALDONADO incorporates and re-alleges paragraphs 1 through 70 as set forth and alleged herein.

147.   MALDONADO'S claim arises under 17 U.S.C. §106 (Title 17 United States Code), TIGER KING PUBLISHING has willfully misrepresented that MALDONADO does not possess the exclusive rights to "I Saw A Tiger," "My First Love," "GW and Me," "Pretty Women Lover," "The Sun Says," and "Here Kitty Kitty," which has directly resulted in financial loss to MALDONADO.

148.   TIGER KING PUBLISHING'S unauthorized use of the subject music in association with the intentional misrepresentation and exploitation of the derivative work acts, were carefully orchestrated in order to accomplish a self-serving and profit seeking purpose, solely directed at obtaining a commercial advantage.

149.   Upon information and belief, TIGER KING PUBLISHING wrongfully divulged that JOHNSON'S Band, Vince Johnson Band, was the original recording artist and, in fact, had the current exclusive rights to perform these musical compositions in any capacity.

150.   Upon information and belief, TIGER KING PUBLISHING committed the aforementioned acts with an intention that the representation would induce others to act, and reliance upon those actions ultimately resulted in Plaintiff suffering monetary injury.

151.   Further, MALDONADO is entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

152.     As a direct and proximate result of the TIGER KING PUBLISHING's infringing conduct alleged herein, MALDONADO has sustained, is sustaining, and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless TIGER KING PUBLISHING'S infringing conduct is enjoined by this Court, TIGER KING PUBLISHING will continue to infringe the copyrighted work at issue.

153.     Therefore, MALDONADO is entitled to preliminary and permanent injunctive relief restraining and enjoining TIGER KING PUBLISHING'S ongoing infringing conduct, pursuant to 17 U.S.C. § 502.

## COUNT X – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AS TO BMG

154.     MALDONADO incorporates and re-alleges paragraphs 1 through 70 as set forth and alleged herein.

155.     MALDONADO had a contractual relationship with JOHNSON prior to JOHNSON entering into any agreements with BMG. Under the terms of the pre-existing contract between MALDONADO and JOHNSON, JOHNSON relinquished all copyright, publishing rights and all other related rights to the music compilations "I Saw A Tiger," "My First Love," "GW and Me," "Pretty Women Lover," and "The Sun Says" to MALDONADO.

156.     At all times relevant herein, BMG was fully knowledgeable of the business and contractual relationship between MALDONADO and JOHNSON.

Notwithstanding that knowledge, BMG encouraged, facilitated, assisted, and caused JOHNSON to breach his agreement with MALDONADO. Concurrently, BMG was aware that all the rights of this song rested with MALDONADO in perpetuity, in all jurisdictions and through all process once it was properly executed, effective May 31, 2013.

157. Therefore, MALDONADO is entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

158. As a direct and proximate result of the BMG'S infringing conduct alleged herein, MALDONADO has sustained, is sustaining, and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless BMG'S infringing conduct is enjoined by this Court, BMG will continue to infringe the copyrighted work at issue.

159. Therefore, MALDONADO is entitled to preliminary and permanent injunctive relief restraining and enjoining BMG'S ongoing infringing conduct, pursuant to 17 U.S.C. § 502.

## COUNT XI BREACH OF CONTRACT AS TO JOHNSON

160. MALDONADO incorporates and re-alleges paragraphs 1 through 70 as set forth and alleged herein.

161. JOHNSON undertook the duty to perform certain contractual obligations under the Agreements and the Confidentiality Agreement. The terms of

these contracts between MALDONADO AND JOHNSON include, but are not limited to, JOHNSON exclusively providing professional music services with confidentially, both as a performer and song writer, for MALDONADO.

162.    At all times relevant herein, JOHNSON breached the valid and enforceable contractual obligations by, inter alia, engaging in alternate financial agreements wherein he claimed ownership of the subject music; claimed creative rights to the subject music; performed the subject music under alternate agreements; published the subject music under alternate agreements; and sold the subject music under alternate agreements.  Each act constitutes a material breach as they are inconsistent with the terms of all five (5) Agreements and the Confidentiality Agreement.

163.    At all times material, MALDONADO has complied with all of the obligations under all of these contractual agreements. As a result of JOHNSON'S actions, MALDONADO has been unjustly harmed as a result of these material breaches and now seeks liquidated damages, pursuant to the agreements.

164.    Plaintiff further is entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

165.    As a direct and proximate result of the JOHNSON'S infringing conduct alleged herein, MALDONADO has sustained, is sustaining, and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate

remedy at law. Unless JOHNSON'S infringing conduct is enjoined by this Court, JOHNSON will continue to infringe the copyrighted work at issue.

166. Therefore, MALDONADO is entitled to preliminary and permanent injunctive relief restraining and enjoining JOHNSON'S ongoing infringing conduct, pursuant to 17 U.S.C. § 502.

## COUNT XII INJUNCTIVE RELIEF

167. MALDONADO seeks to enjoin BMG, JOHNSON, and TIGER KING PUBLISHING from the unauthorized use of the name; "TIGER KING."

168. MALDONADO seeks to enjoin BMG, JOHNSON, and TIGER KING PUBLISHING from the unauthorized use of the MALDONADO'S copyrighted composition musicals or with any other potential affiliates.

169. Under the Copyright Act, "[a]ny court having the jurisdiction of a civil action arising under this Title may grant temporary and final injunction(s) of a copyright." 17 U.S.C. §502(a). Permanent injunction relief, however may be granted, when a copyright infringement occurs, a copyright proprietor is entitled to an injunction prohibiting further infringing use and performances.

170. JOHNSON has falsely claimed ownership of the creative rights to music compilations he contractually relinquished to MALDONADO in 2013 and 2014. In doing so, JOHNSON materially breached five contracts associated with

the transfer of music right and confidentiality he entered into with MALDONADO. JOHNSON'S intent was to capitalize on MALDONADO'S post *Tiger King* fame.

171. After claiming ownership of the rights to the subject music compilations, JOHNSON engaged with BMG and TIGER KING PUBLISHING to produce, publish and sell the subject music.

172. Notwithstanding being placed on notice of JOHNSON's misrepresentations, BMG and TIGER KING PUBLISHING have failed to investigate or correct the harm to MALDONADO, harms that continue as of the writing of this Complaint.

173. As a result of the actions of BMG, JOHNSON and TIGER KING PUBLISHING, both together and individually, MALDONADO has suffered embarrassment, humiliation, loss of income and permanent damage to both his reputation and to the Joe Exotic and Tiger King brands.

## **PRAYER FOR RELIEF**

WHEREFORE, MALDONADO is seeking injunctive relief, statutory damages in excess of $75,000.00 for both copyright infringements of the six composition musicals in question; an accounting to determine the full extent of such damages; compensatory and confidentially damages from ALL said Defendants; damages from BMG and TIGER KING PUBLISHING for undisclosed

compensation paid or distributed to JOHNSON, attorneys fees and costs, a trial by jury and any other relief this court deems necessary and just.

## DEMAND FOR A JURY TRIAL

MALDONADO hereby demands trial by jury of all issues so triable herein.

Dated this 23rd day of November, 2022.

Respectfully submitted,

**LAW OFFICES OF PHILLIPS & HUNT**

*/s/ John M. Phillips*
**JOHN M. PHILLIPS, ESQUIRE**
Florida Bar No.: 0477575
212 North Laura Street
Jacksonville, Florida 32202
(904) 444-4444
(904) 508-0683 (facsimile)
*Attorneys for Plaintiff*
jmp@floridajustice.com
amy@floridajustice.com
george@floridajustice.com
catherine@floridajustice.com